USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PERRY LOPEZ,

                    Plaintiff,

          v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, JENNIFER ADE, *Principal
P.S. 46*, AND NITZA BELLAMY, *Asst.
Principal P.S. 46*,

                    Defendants.

---

No. 17-CV-9205 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Perry Lopez, proceeding *pro se*, filed this action against his employer, the New York City Department of Education (the "DOE"), as well as P.S. 46 Principal Jennifer Alexander-Adé (sued as Jennifer Ade) and Assistant Principal Nitza Gonzalez (sued as Nitza Bellamy), asserting claims for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and retaliation under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, Defendants' motion is granted.

## FACTUAL BACKGROUND[1]

Plaintiff is a special education teacher who was employed by the DOE at P.S. 46, a school in the Bronx, New York, for 12 years.  AC ¶ 8.  According to Plaintiff, while employed at P.S. 46, he was—at age 57, *see* Opp'n at 4—"the oldest special education teacher at the school with the highest salary," AC ¶ 9.

Plaintiff alleges that, during his time at P.S. 46, he was denied career advancements due to his age.  *See id.* ¶ 10.  For example, he maintains that several younger teachers were promoted to lead teacher during the 2016-2017 school year "despite the fact that they were less-experienced and less-qualified than [he was]," *id.*, and despite the fact that "Plaintiff repeatedly sought these lead teacher positions and asked [the P.S. 46] administration about his eligibility for these positions," Opp'n at 4.  In particular, Plaintiff identifies four younger teachers who were allegedly promoted in the 2016-2017 school year: (1) Leslie Levy ("under 40 years old"), an ESL teacher for fourth grade who was promoted to "lead positions . . . and conducted workshops"; (2) Paula Faulkner (approximately 35 years old), a fourth grade teacher who was "given lead teacher

---

[1] The following facts are drawn from Plaintiff's Amended Complaint, Dkt. 25 ("AC"), his opposition to the motion to dismiss and the exhibits attached thereto, Dkt. 38 ("Opp'n"), and the exhibits attached to his initial complaint, Dkt. 1 at 8-13.  *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering the allegations in a *pro se* plaintiff's opposition on a motion to dismiss in addition to those in his complaint).  Plaintiff's factual allegations are assumed to be true for the purpose of resolving this motion.  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). Plaintiff has also attached excerpts from several emails to his opposition.  These emails are comprised of Special Ed Complaint and Safety/Discipline Report Forms Plaintiff filed with the United Federation of Teachers, Opp'n at A-001, A-003-12, an email Plaintiff sent to UFT representative Matt Carioscia, *id.* at A-016, emails Plaintiff sent to the UFT Liaison to the Division of Specialized Instruction and Student Support, *id.* at A-020-22, correspondence between Plaintiff and Alexander-Adé, *id.* at A-002, A-014-15, A-018, A-025-27, emails Plaintiff sent to the "Title IX Inquiries" DOE email address, *id.* at A-017, A-019, an email from P.S. 46 Assistant Principal Rena Westberry requesting documents for a student in Plaintiff's classroom, *id.* at A-023-24, and a parental notification of a Behavioral Intervention Planning/Review meeting, *id.* at A-028.  As they may be considered "integral to the Amended Complaint," *Westbrooke v. Bellevue Hosp. Ctr.*, No. 16-CV-9845 (RA), 2018 WL 4189514, at *3 (S.D.N.Y. Aug. 31, 2018), the Court will consider these emails in light of the well-established principle that *pro se* litigants are afforded "special solicitude" and that their submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (citation omitted).

positions . . . to conduct workshops"; (3) Ms. Del Toro ("under 40 years old"), an "ELA cluster grade teacher," who "taught ELA subjects with less burdensome assignments"; and (4) Kilmey Moreno ("under 30 years old"), who "was made an ELA coach." *Id.*; *see also* AC ¶ 10. Additionally, Plaintiff contends that he "was assigned the most severely behaviorally challenged students in the school." Opp'n at 4.  By way of comparison, he asserts that Cleo Cabral, an ESL teacher under 40 years of age, "was given [a] smaller class setting in a cluster environment . . . while Plaintiff remained in classes with very different students," which left Cabral in "a far less strenuous position." *Id.* at 5.

Plaintiff further alleges that he was subjected to retaliatory action as a result of "over a hundred" complaints he "routinely" made via email throughout his time at P.S. 46.  AC ¶ 11.  Such complaints were allegedly made "about the treatment and safety of students with special needs at his school." *Id.*  For example, on November 22, 2016, Plaintiff emailed Defendant Alexander-Adé informing her that a "Paraprofessional" had not been present during school dismissal, which had compromised "student safety."  Opp'n at A-026.  Plaintiff contends that Alexander-Adé "would routinely dismiss Plaintiff's complaints and never acted on his complaints." AC ¶ 13.  He also contends that Defendants "issu[ed] him less-than-effective or unsatisfactory observations." *Id.* ¶ 14.  After one observation by Defendant Gonzalez, for instance, Plaintiff emailed Alexander-Adé and complained that Gonzalez's failure to "de-escalate [a] potentially dangerous situation[]" during her observation had "compromised" the "safety of all students involved."  Opp'n at A-002. He thus requested that "Informal/Formal Observations be conducted by another supervisor because Ms. [Gonzalez] was not acting 'In Good Faith,' and may retaliat[e] in the future, due to the nature of [his] e-mail." *Id.*

Plaintiff similarly asserts that he "made repeated complaints" to the United Federation of Teachers ("UFT") concerning "the school's lack of compliance to students' special education requirements and . . . child endangerment." AC ¶ 12.  On January 11, 2017, for instance, Plaintiff emailed UFT Liaison to the Division of Specialized Instruction and Student Support Kerry Yefet, alleging that Gonzalez had "[done] nothing" when a student acted violently during a classroom observation, and that she was thereby "setting [him] up for failure." Opp'n at A-022.  He emailed Yefet again on January 12, 2017 regarding a student who was assigned to his classroom but did not have an Individualized Education Program ("IEP") or records from his former teacher. *Id.* at A-021.  In addition, in February 2017, Plaintiff filed two Special Ed Complaint Forms regarding a "student placed in [his] classroom without the mother's full consent," *see id.* at A-009, stating "[t]he child is academically and behaviorally challenged.  It is not fair to the student for falling further behind with the curriculum.  We are violating his mandates," *id.* at A-011.  Plaintiff also filed Safety/Discipline Report Forms with the UFT concerning unspecified incidents on January 17 and January 19, 2017.  *See id.* at A-003-07.  On January 10, 2017, he filed a Special Ed Complaint Form with the UFT concerning an "informal rating" that was "not indicative of [his] Teacher Lesson observation."  *See id.* at A-001.

Plaintiff was "ultimate[ly] remov[ed]" from P.S. 46 following an incident with a student that occurred in and around his classroom on October 5, 2016.  *See* AC ¶¶ 15-16, 24; Opp'n at 2.  Plaintiff asserts that, on October 5, 2016, he removed a student from his classroom because he believed that the student "was about to erupt into a violent and aggressive rage." AC ¶ 17.  He contends that Defendants Alexander-Adé and Gonzalez subsequently conducted an investigation into the incident, *id.* ¶ 18, even though "other teachers at the school routinely engage[d] in the same or worse behavior as Plaintiff and [did] not receive any discipline or repercussions," *id.* ¶ 23.

4

As to these "other teachers," Plaintiff alleges in particular that "Mr. Rosado, the Dean of Discipline, once restrained a female third-grade student by the neck yet was never investigated," and that "Mr. Arroyo, a science teacher, and Mr. Scarantino, a testing coordinator, routinely restrained student JB, yet were never investigated." *Id.*

Defendants' investigation "eventually concluded that [Plaintiff had] engaged in misconduct." *Id.* ¶ 18.  On December 1, 2016, Alexander-Adé emailed him "the report from the corporal punishment allegation that was lodged against [him]."  Opp'n at A-025.  Shortly thereafter, on January 10 and 19, 2017, Plaintiff reportedly emailed Superintendent Maribel Hulla concerning Defendants' alleged retaliation, as well as about "special-education violations and safety risks to children," and "an incident involving a student in his classroom" that apparently demonstrated that his "supervisor [had] not been effective . . . with school violence."  AC ¶¶ 20-21.  He also filed Safety/Discipline Report Forms related to the October 5, 2016 incident and subsequent investigation.  For instance, on February 17, 2017, Plaintiff complained that he had been "falsely accused of corporal punishment by several co-workers," and that Gonzalez had "conducted [the] investigation with possible retaliation."  Opp'n at A-010.

On January 23, 2017, Defendants issued Plaintiff a "letter to file," which "substantiat[ed] the investigation related to the October 5, 2016 incident" and indicated that "he could face disciplinary charges leading to his termination" as a result of their conclusions.  AC ¶ 22.  In an email sent to "Title_IX_Inquiries@schools.nyc.gov" ("Title IX Inquiries") that same day, Plaintiff argued that he had been "wrongfully accused of 'grabbing a child by the collar.'"  Opp'n at A-017.  He also alleged that Gonzalez had "secretly" interviewed his students, and that she "ha[d] demonstrated acts of retaliation against [him]" by giving him "an evaluation for 90 minutes while a student in [his] classroom was threatening to 'kill his classmates,'" as well as by giving him "a

5

poor rating" and using "poor judgment . . . in rating a teacher that was under a hostile situation." *Id.*

In June 2017, Plaintiff was served with disciplinary charges pursuant to Education Law § 3020-a ("Section 3020-a"). AC ¶ 24. He has been assigned to the "Absent Teacher Reserve" ("ATR") pool ever since. *See id.* ¶ 29. Following the Section 3020-a hearing that occurred in July and August 2017, Plaintiff was suspended for 15 days without pay. *See id.* ¶¶ 26, 28. Plaintiff was then "ultimate[ly] remov[ed]" from P.S. 46 in November 2017. *See* Opp'n at 2. Plaintiff has apparently "filed an Article 75 special proceeding" challenging the Section 3020-a decision. AC ¶ 34.

## PROCEDURAL HISTORY

On August 17, 2017, Plaintiff filed an EEOC complaint against Defendants, alleging, *inter alia*, age discrimination and retaliation related to his complaints about unsafe school conditions. *See* Dkt. 1 at 8-11. The EEOC issued Plaintiff a Notice of Right to Sue on August 24, 2017. *See id.* at 12.

Plaintiff initiated this action on November 22, 2017, asserting claims under the ADEA and state and city human rights laws. *See* Dkt. 1. On June 26, 2019, the Court granted Defendants' motion to dismiss Plaintiff's complaint. *See* Dkt. 22. The Court dismissed Plaintiff's claims as to the individual defendants, Jennifer Alexander-Adé and Nitza Gonzalez, with prejudice, but granted Plaintiff leave to amend the complaint as to the DOE. *See id.* at 10.

Plaintiff filed the Amended Complaint—the operative complaint—on August 19, 2019, asserting claims against the DOE under the ADEA, as well as against the DOE and the individual

defendants under the ADA and the Rehabilitation Act.  *See* Dkt. 25.[2]  On November 4, 2019, Defendants moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).[3] *See* Dkt. 28.  Plaintiff filed an opposition on January 2, 2020, Dkt. 38, to which Defendants replied on January 30, 2020, Dkt. 41.

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In the discrimination context, "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Additionally, on a motion to dismiss, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

In evaluating a motion to dismiss, a "district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, a court may also consider "documents attached to the complaint as an exhibit or

---

[2] Although Plaintiff states in his opposition that Defendants have violated the "New York State and City Human Rights Law" as well, *see* Opp'n at 1, the Amended Complaint does not actually assert claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290-97, or the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-131.

[3] While Defendants technically assert that their motion is based on both Rule 12(b)(1) and Rule 12(b)(6), *see* Mot. at 2; Reply at 1, they have not clearly articulated any arguments under 12(b)(1), and subject matter jurisdiction is not lacking here.

incorporated in it by reference," as well as "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted).  Documents extraneous to the Amended Complaint may be considered if they are "integral to the Amended Complaint, relevant, accurate, and authentic." *Westbrooke*, 2018 WL 4189514, at *3.  In the case of a *pro se* plaintiff, moreover, these principles must be balanced against "the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss, and the mandate that 'the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 Civ. 6331 (RA), 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (citations omitted).

## DISCUSSION

### I.     Timeliness and Administrative Exhaustion

First, contrary to Defendants' contentions, *see* Mot. at 6, 13, the Court concludes that Plaintiff's claims are timely and do not fail on exhaustion grounds.

### A. ADEA

"A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice." *Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018) (summary order) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" constitute separate actionable employment practices, which may not be considered if time-barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Plaintiff filed a charge with the EEOC on August 17, 2017, and commenced the instant action on November 22, 2017.  Accordingly, any discrete

discriminatory or retaliatory actions that occurred prior to October 21, 2016—i.e., 300 days before August 17, 2017—are barred by the ADEA's 300-day statute of limitations. *See Boonmalert*, 721 F. App'x at 31.

Defendants maintain that the Court should dismiss Plaintiff's ADEA claims to the extent that they relate to events that occurred on "unspecified dates" because Plaintiff fails to allege that such "claims occurred within the statute of limitations." Mot. at 7. Drawing all reasonable inferences in Plaintiff's favor, however, his claims—even those based on events that occurred on "unspecified dates"—do not appear to be time-barred. Aside from the October 5, 2016 incident, the specific dates that Plaintiff includes in his Amended Complaint all fall within the limitations period, as they allegedly occurred between December 2016 and November 2017. *See* AC ¶¶ 8-34.[4] Although the October 5, 2016 incident itself is outside of the statute of limitations period, the claimed retaliation is alleged to have occurred after October 21, 2016. *See, e.g.*, *id.* at ¶¶ 22, 24. Similarly, although Plaintiff refers, without any specific dates, to several promotions of younger colleagues that occurred during the "2016-17 school year," *see* Opp'n at 4-5, the Court reasonably infers that these events may well have occurred after October 21, 2016 as well. *See, e.g.*, *Cabrera v. New York City*, No. 04 Civ. 2688 (RWS), 2004 WL 2053224, at *9 (S.D.N.Y. Sept. 13, 2004) (concluding that plaintiff's "failure to specify the dates relevant to the allegations" in her complaint did not merit dismissal under Rule 12(b)(6)). Thus, Plaintiff's claims under the ADEA are not deemed time-barred for purposes of this motion.

---

[4] For the most part, the conduct encompassed in the attached emails falls within the statute of limitations period. *See* Opp'n at A-001-28. To the extent that these emails fall outside of this period—such as emails from Assistant Principal Rena Westberry, which are not dated but refer to deadlines on May 23, 2016, *see id.* at A-023, an email from Alexander-Adé dated January 26, 2016, *id.* at A-018, and notification of a Behavioral Intervention meeting on October 11, 2016, *id.* at A-028—the Court will not consider them for the purposes of his ADEA claims.

**B.  ADA**

As a preliminary matter, Plaintiff does not specify under which Title of the ADA he brings his retaliation claim.  *See* AC ¶¶ 37-39.  The Court assumes, however, that Plaintiff's ADA claim arises under Title V, which generally prohibits retaliation against conduct made unlawful by the ADA, in combination with Title II, which governs the provision of public services.  *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter[.]"); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall . . . be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").  Indeed, Defendants assume that Plaintiff's ADA-related allegations concern retaliation in response to his purported objection to Title II violations, *see* Mot. at 14-15, which Plaintiff does not dispute, *see* Opp'n at 5-7.  Moreover, Plaintiff's complaints relate to the treatment of students in a public school, rather than any discrimination he himself suffered based on a disability.  Such practices are proscribed by Title II.  *See Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 593 (S.D.N.Y. 2016) ("[T]he practices [Plaintiff] allegedly opposed related to the provision of special education services to students by a public entity . . . . Those practices were thus prohibited by Title II.") (citations omitted).

The administrative procedures and statutes of limitations for retaliation claims under Title V depend on the underlying Title that the protected activity concerned.  *See Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 63 (2d Cir. 2019) (statute of limitations); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (administrative exhaustion).  As to the statute of limitations, the Second Circuit recently clarified that while employment discrimination claims under Title I of the ADA are subject to a "180-day or 300-day time limit

within which a plaintiff must file a complaint with the EEOC," other ADA claims are subject to New York's three-year statute of limitations. *Purcell*, 931 F.3d at 63 & n.16. Because the earliest date alleged in the Amended Complaint is October 5, 2016, AC ¶ 15, Plaintiff's ADA claims are not time-barred under the applicable three-year statute of limitations.

As to administrative exhaustion, because the text of Title II does not mandate filing a complaint with the EEOC prior to suit, *see* 42 U.S.C. § 12133, the Second Circuit has "strongly suggested that Title II does not impose an exhaustion requirement." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 170 n.11 (2d Cir. 2013). Other courts have similarly held that Title II imposes no such requirement. *See, e.g.*, *Volpe*, 195 F. Supp. 3d at 594 ("[N]othing in the ADA required [plaintiff] to exhaust her Title V claims predicated on Title II rights before filing the instant suit."). Plaintiff's retaliation claim under the ADA is therefore not precluded by his failure to include it in his EEOC charge.

### C. Rehabilitation Act

Although the Amended Complaint does not specify on which provision of the Rehabilitation Act Plaintiff bases his claim, *see* AC ¶¶ 40-42, Plaintiff's opposition refers to Section 504 of the Act, *see* Opp'n at 5. The Court thus assumes that his Rehabilitation Act claim is brought under Section 504. As Defendants rightly note, claims under the Rehabilitation Act in New York are subject to a three-year statute of limitations period. *See* Mot. at 6; *see also Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (summary order). Moreover, the Rehabilitation Act does not contain an exhaustion requirement. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81-82 (2d Cir. 2020) ("[W]e have never held that a Rehabilitation Act claim against a non-federal employer is subject to an administrative exhaustion requirement, nor is there any statutory basis for imposing one."). Plaintiff's claims under the

11

Rehabilitation Act are thus neither time-barred nor unexhausted based on the allegations in the Amended Complaint.

## II.     Plaintiff's Age Discrimination Claim under the ADEA

Construing his allegations liberally, Plaintiff appears to allege age discrimination under two separate theories: failure to promote and disparate impact.  The Court addresses each in turn.

### A.   Failure-to-Promote Claim

Plaintiff appears to base his ADEA discrimination claim—at least in part—on his alleged failure to be promoted to "lead teacher."  Although the ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1), Plaintiff does not successfully plead age discrimination based on any failure to be promoted.  To plead a plausible failure-to-promote claim, a plaintiff must allege facts from which the Court may conclude: "(1) that he is a member of a protected class; (2) that he applied for a promotion to a position for which he was qualified; (3) that he was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff."  *Brophy v. Chao*, No. 17-CV-9527 (CS), 2019 WL 498251, at *4 (S.D.N.Y. Feb. 7, 2019) (citation omitted).  In most cases, a plaintiff must allege in particular "that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion."  *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 769 (2d Cir. 2015) (summary order) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).[5]

---

[5] A plaintiff need not allege a "specific application," however, if "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through

While Plaintiff asserts that he "sought to become a lead teacher," AC ¶ 10, and that he "repeatedly sought these lead teacher positions and asked [the] administration about his eligibility for these positions," Opp'n at 4, he does not allege the specific positions to which he applied or the manner in which he did so.  In fact, he does not plead that he actually applied for the position of lead teacher, let alone that he was rejected from that position.  *See, e.g.*, *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 413-14 (S.D.N.Y. 2012) (dismissing failure-to-promote claim where plaintiff asked his supervisor "why don't you just give me the job" but did not allege that he had applied); *Shah v. Tunxis Cmty. Coll.*, No. 14-CV-00712 (MPS), 2015 WL 4254909, at *5 (D. Conn. July 14, 2015) (dismissing failure-to-promote claim where plaintiff merely stated that he "had previously expressed interest" in a promotion).  Because Plaintiff has not adequately pled that he applied for and was rejected from any particular position, his assertion that younger teachers—Ms. Levy, Ms. Faulkner, Ms. Del Toro, and Ms. Moreno—were promoted "despite the fact that they were less-experienced and less-qualified," AC ¶ 10; Opp'n at 4, is insufficient to support a failure-to-promote claim.  Plaintiff's ADEA claim based on any alleged failure-to-promote thus fails.  To the extent that Plaintiff seeks to amend this claim, he shall plead specific details as to the particular "lead teacher" positions he sought, including what positions were available, when they were available, when he sought the positions, with whom he spoke about them, and what responses he received.

---

informal procedures endorsed by the employer."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004).  Plaintiff pleads no facts that would support application of these exceptions here.  Indeed, while courts in this Circuit have permitted exceptions to the "specific application" requirement in certain situations, those cases have nonetheless involved more detailed allegations as to the timing and manner in which the positions were sought.  *See, e.g.*, *Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) (finding claim met "specific application" requirement at the pleading stage when plaintiff alleged that he "complained about the failure to promote him" on a specific date); *Dawson*, 624 F. App'x at 769 (waiving "specific application" requirement where "Plaintiff ha[d] alleged a four-year campaign of letter-writing, phone calls, and in-person meetings to secure . . . restoration to his previous position").

### B.  Disparate Impact Claim

To state a prima facie case for age discrimination, a plaintiff must demonstrate that (1) he "was within the protected age group"; (2) he "was qualified for the position"; (3) he "experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).  "[A]t the motion to dismiss stage, an ADEA plaintiff need not plead every element of a prima facie case, only facts which plausibly suggest that (1) the employer took an adverse action and (2) age was the 'but for' cause of that adverse action." *Boonmalert*, 721 F. App'x at 32.  "[T]he complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather, "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  It is uncontested that Plaintiff, at age 57, was within the protected age group, and that he was qualified for his position at P.S. 46.  The issues before the Court are thus whether Plaintiff has plausibly alleged that he suffered an adverse employment action and that his age was the "but for" cause of that action.

### 1.  Adverse Employment Action

For purposes of a discrimination claim, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boonmalert*, 721 F. App'x at 32 (quoting *Kassner*, 496 F.3d at 238).  Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique

14

to a particular situation." *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *4 (S.D.N.Y. Feb. 26, 2015) (citation omitted).  Here, Plaintiff plausibly alleges adverse employment actions based on the investigation of the October 5, 2016 incident and the subsequent imposition of Section 3020-a charges, as well as the 15-day suspension without pay following the Section 3020-a hearing.  *See* Opp'n at 2.[6]

First, Defendants' investigation of Plaintiff's "incident" and the subsequent imposition of 3020-a charges qualify as adverse employment actions because Plaintiff has plausibly alleged that the disciplinary charges resulted in a "materially adverse change" to his employment, *Boonmalert*, 721 F. App'x at 32, i.e. the 15-day suspension without pay, AC ¶ 28.   Indeed, courts in this Circuit have presumed that the imposition of Section 3020-a charges constitutes a materially adverse employment action for the purposes of an ADEA claim.  *See, e.g.*, *Nuchman v. City of New York*, No. 09-CV-2392 (CBA), 2015 WL 13022716, at *10 (E.D.N.Y. Aug. 25, 2015) (assuming that Plaintiff established the first element of a *prime facie* case for discrimination under the ADEA and ADA for her claim relating to the imposition of Section 3020-a charges), *aff'd*, 639 F. App'x 48 (2d Cir. 2016).  Similarly, courts have also held that imposition of such charges qualify as adverse actions under related statutes and laws.  *See e.g.*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson*

---

[6] To the extent that Plaintiff alleges that the issuance of "less-than-effective or unsatisfactory observations," AC ¶ 14, or the assignment of "the most severely behaviorally challenged students in the school," Opp'n at 4, constitute "adverse employment actions," those allegations fail.  *See, e.g.*, *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.") *abrogated on other grounds by Nat'l R.R. Passenger*, 536 U.S. at 101; *Smith v. City of New York*, 385 F. Supp. 3d 323, 336 (S.D.N.Y. 2019) ("A Plaintiff's subjective 'dissatisfaction with the work assigned,' absent some evidence that the assignment materially worsened Plaintiff's working conditions, 'is insufficient to make out an adverse employment action.'") (citation omitted).  Among other things, Plaintiff has not alleged that any of these actions resulted in a reduction in his wages, benefits, or job responsibilities.  *Cf. Shapiro v. N.Y.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (finding an issue of material fact existed as to whether unsatisfactory end-of-year ratings were adverse employment actions because plaintiffs provided evidence of consequences of such ratings on, *inter alia*, lost pension benefits, lost income, and removal from extracurricular paid positions).

*Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding that Section 3020-a hearing was an adverse employment action in a First Amendment retaliation claim); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 473 (S.D.N.Y. 2011) (stating that imposition of Section 3020-a charges was an adverse employment action for Title VII retaliation claim).  The investigation and imposition of Section 3020-a charges thus qualify as adverse employment actions for these purposes.

Next, Plaintiff's 15-day suspension without pay also constitutes an adverse employment action as "the Second Circuit has long held that a suspension without pay, for which a plaintiff receives no backpay, is an adverse employment action."  *McInnis v. Town of Weston*, 458 F. Supp. 2d 7, 13 (D. Conn. 2006); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (noting that one-week suspension without pay qualified as an adverse employment action).

Lastly, Plaintiff alleges that he "was removed from P.S. 46 after he was served" with Section 3020-a charges in June 2017, AC ¶ 24, and also that the Section 3020-a hearing "led to . . . his ultimate removal from the school in November 2017," Opp'n at 2.  Plaintiff has been assigned to the ATR pool "[s]ince being served and undergoing his 3020-a case."  AC ¶ 29.  Although termination from the DOE following the Section 3020-a findings would constitute an adverse employment action, *see Johnson*, 2015 WL 845723, at *4, transfer from P.S. 46 to a different school or to the ATR pool alone would not, *see, e.g.*, *Moschetti v. N.Y.C. Dep't of Educ.*, No. 15-CV-3161 (KMK), 2018 WL 4759787, at *16 (S.D.N.Y. Sept. 28, 2018) (concluding that ATR status was not an adverse employment action where plaintiff "[did] not explain how ATR status serves as a demotion or loss of wages"), *aff'd*, 778 F. App'x 65 (2d Cir. 2019); *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 298 (S.D.N.Y. 2009) (explaining that an involuntary transfer is an

adverse employment action only "when an employee's new assignment is materially less prestigious, materially less suited to [his] skills and expertise, or materially less conducive to career advancement") (citation omitted).  Plaintiff, moreover, asserts that he "*is* . . . a teacher within the school system operated by the [DOE]." AC ¶ 4 (emphasis added).  To the extent that Plaintiff seeks to allege, rather, that he was terminated from the DOE entirely—or that his transfer served as a demotion, resulted in a loss of wages, or otherwise constituted an adverse action—he shall allege facts supporting such an allegation in an amended complaint.

## 2.  Inference of Discrimination

In any event, Plaintiff has not plausibly alleged that any of the adverse employment actions discussed above "occurred under circumstances giving rise to an inference of discrimination," *Gorzynski*, 596 F.3d at 107, or that "age was the 'but for' cause of" these actions, *Boonmalert*, 721 F. App'x at 32.  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  "A showing of disparate treatment—that is, a showing that the employer treated [a] plaintiff 'less favorably than a similarly situated employee outside his protected group'—is [also] a recognized method of raising an inference of discrimination[.]"  *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  In order to succeed on a disparate treatment claim, a plaintiff "must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]."  *Id*.

17

Construing his allegations liberally, Plaintiff first avers discriminatory intent based on a comparison to other teachers at P.S. 46, asserting that three teachers at the school "routinely engage[d] in the same or worse behavior as Plaintiff and [did] not receive any discipline or repercussions." AC ¶ 23. In particular, he contends that Mr. Rosado, the Dean of Discipline, "restrained a female third-grade student by the neck yet was never investigated," and that "Mr. Arroyo, a science teacher, and Mr. Scarantino, a testing coordinator, routinely restrained student JB, yet were never investigated." *Id.* It is not clear, however, that any of these teachers were "similarly situated in all material respects" to Plaintiff at the time of the alleged incidents. *Mandell*, 316 F.3d at 379. In this Circuit, "[a]n employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (quoting *Graham*, 230 F.3d at 40). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Hausdorf v. N.Y.C. Dep't of Educ.*, No. 17-CV-2115 (PAE) (SN), 2018 WL 1871945, at *7 (S.D.N.Y. Jan. 25, 2018) (quoting *Mandell*, 316 F.3d at 379). Nonetheless, at the pleading stage, "a complaint generally must identify the similarly situated employees with some specificity." *Id.*

Plaintiff's comparison to these teachers fails to "make plausible the conclusion that 'but for' his age," Defendants would not have conducted the investigation into the October 5, 2016 incident. *See Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (alterations and citations omitted). Notably, Plaintiff does not include the ages of these other teachers in his Amended Complaint or opposition, but merely contends that they "were all younger than" him. *See* Opp'n at 2. The mere fact that these teachers were "younger" does not demonstrate that age was the "but for" cause of the investigation into the October 5, 2016 incident

18

or the subsequent disciplinary charges. *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 465-66 (S.D.N.Y. 2010) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger teachers" because such allegations lacked "facts from which age discrimination [could be inferred"). Nor has Plaintiff provided facts upon which the Court could conclude that the Dean of Discipline, a science teacher, and a testing coordinator were "subject to the same performance evaluation and discipline standards" as he. *See Ruiz*, 609 F.3d at 493-94. And as to whether these teachers engaged in the "same or worse behavior," Plaintiff alleges only that they "routinely restrained" a particular student and/or once restrained another student "by the neck." AC ¶ 23. Plaintiff's allegations thus fail to show that he was treated less favorably than any "similarly situated" employee.

In addition, the attached email conversations between Plaintiff and Defendant Alexander-Adé are devoid of any references to Plaintiff's age, thus undermining any inference of discriminatory intent. In an email dated November 3, 2016, for instance, Alexander-Adé asked Plaintiff to "open a request for re-evaluation" for a student, Opp'n at A-027, and on November 22, 2016, Plaintiff and Alexander-Adé discussed a paraprofessional's absence during school dismissal, *id.* at A-026. In another set of emails, dated December 1 and 2, 2016, Alexander-Adé sent Plaintiff the report from the "corporal punishment allegation" and requested that he submit his statement so that she could "send [his] complete statement together with the report to the legal team for evaluation and a final decision." *Id.* at A-025. Plaintiff's email to Alexander-Adé on January 15, 2017, moreover, expressed concerns about a negative classroom observation, but did not assert any claims of age discrimination. *See id.* at A-002. Lastly, on February 2, 2017, Alexander-Adé emailed Plaintiff asking him to "stop by to see [her] in the Main Office" the next day, to which Plaintiff asked if he would "need a UFT representative again." *Id.* at A-015. No reference to age

is contained in any of these emails, nor is there any indication that the emails—or any of the events described therein—were motivated by discriminatory intent based on Plaintiff's age.

Similarly, Plaintiff does not point to any circumstantial evidence that gives rise to an inference that any of Defendants' actions were based on his age.  According to the Amended Complaint, the "Hearing Officer" imposed the 15-day suspension as a part of her decision following the Section 3020-a hearing.  *See* AC ¶ 28.  Plaintiff does not allege that the Hearing Officer imposed the suspension based on any discriminatory animus.  *See Mazur v. N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 634 (S.D.N.Y. 2014) (rejecting plaintiff's ADEA claim following a Section 3020-a hearing because she had "not shown that the hearing officers were biased or that certain evidence was unavailable or overlooked, thus undermining the inference that her suspension was connected to her protected status"), *aff'd*, 621 F. App'x 88 (2d Cir. 2015).  Nor does Plaintiff maintain that Defendants influenced the Hearing Officer's decision based on their own discriminatory intent.

In the absence of additional circumstantial evidence establishing discrimination based on age, Plaintiff has failed to allege even a minimal inference that age was the "but-for" cause of any of the adverse employment actions.  Accordingly, Plaintiff's claim for discrimination under the ADEA is dismissed.

## III.    Plaintiff's Retaliation Claim under the ADEA

Plaintiff also argues that Defendants "retaliat[ed] against [him] based on his age."  AC ¶ 36.  Like his ADEA discrimination claim, his ADEA retaliation claim also fails.  "In order to plead a prima facie claim of retaliation under . . . the ADEA, a plaintiff must allege that (1) he participated in a protected activity; (2) the employer knew of his protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the participation in the

protected activity and the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x

112, 115 (2d Cir. 2020) (summary order). With respect to the first element, a plaintiff engages in

a protected activity under the ADEA if he has "a good faith, reasonable belief that he [is] opposing

an employment practice made unlawful by . . . [the ADEA]." *Kessler v. Westchester Cty. Dep't of*

*Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *McMenemy v. City of Rochester*, 241 F.3d

279, 285 (2d Cir. 2001)). "Protected activity under the ADEA includes opposing or charging

unlawful practices, or participating in any manner in the investigation, proceedings or litigation of

an ADEA claim." *Pocino v. Culkin*, No. 09-CV-3447 (RJD) (RLM), 2010 WL 3516219, at *3

(E.D.N.Y. Aug. 31, 2010). However, the ADEA is not an "all-purpose whistleblower statute."

*McCalman v. Partners in Care*, No. 01 Civ. 5844 (FM), 2003 WL 22251334, at *6 (S.D.N.Y. Sept.

30, 2003).

   Plaintiff has not plausibly alleged that he engaged in protected activity under the ADEA

because he has not provided any facts demonstrating that he believed that "he was opposing an

employment practice made unlawful by" the ADEA during his tenure at P.S. 46. *See Kessler*, 461

F.3d at 210. As discussed below, Plaintiff alleges only that he participated in protected activity by

making complaints about "the treatment and safety of students with special needs at his school

throughout his 12 years at the school." AC ¶ 11. None of Plaintiff's complaints, however, appear

to relate to concerns about age discrimination. *See, e.g.*, *McCalman*, 2003 WL 22251334, at *6

(finding complaints to Department of Health about employer's non-age-related practices did not

constitute "protected activity" under ADEA). Plaintiff's retaliation claim under the ADEA is thus

dismissed.

**IV.     Plaintiff's Retaliation Claims under the ADA and Rehabilitation Act**

"The ADA prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). The Rehabilitation Act contains a "similar provision[] against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). As with retaliation claims under the ADEA, to state a claim for retaliation under the ADA and Section 504 of the Rehabilitation Act, a plaintiff "must show that: (1) [he] engaged in an activity protected by the ADA [or Rehabilitation Act]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019) (summary order) (citation omitted). "To survive a motion to dismiss, an employee need not specifically plead every element; [he] must allege just enough factual matter to render [the] retaliation claims plausible." *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016) (internal quotation marks and citation omitted). Because Plaintiff has failed to plausibly allege Defendants' awareness of any protected activity, as well as a causal connection between the protected activity and any adverse employment actions, his retaliation claims fail.

**A.  Protected Activity**

"There is significant precedential support for the proposition that 'a non-disabled individual who files a complaint of disability discrimination is engaging in activity protected under

the ADA.'" *Volpe*, 195 F. Supp. 3d at 596 (citation omitted).  Under the Rehabilitation Act and

ADA, moreover, "[a] plaintiff may prevail on a claim for retaliation even when the underlying

conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a

good faith, reasonable belief that the underlying challenged actions of the employer violated [the]

law.'" *Treglia*, 313 F.3d at 719 (citation omitted); *see also Natofsky v. City of New York*, 921 F.3d

337, 354 (2d Cir. 2019) ("Protected activity is action taken to protest or oppose statutorily

prohibited discrimination.") (internal quotation marks and citation omitted).  Thus, courts in this

Circuit have concluded that advocacy on behalf of special education students constitutes protected

activity under the ADA and the Rehabilitation Act.  *See, e.g.*, *Payson v. Bd. of Educ. of Mount

Pleasant Cottage Sch., USFD*, No. 14 Civ. 9696 (JCM), 2017 WL 4221455, at *24 (S.D.N.Y. Sept.

20, 2017) (explaining that advocacy that "sought to ensure that special education students were

not denied the benefits of public education" was protected activity under Rehabilitation Act);

*Volpe*, 195 F. Supp. 3d at 597 (stating that complaints about the safety and treatment of special

education students were protected activity under the Rehabilitation Act and ADA); *Stahura-Uhl v.

Iroquois Cent. Sch. Dist.*, 836 F. Supp. 2d 132, 143 (W.D.N.Y. 2011) (holding that special

education teacher advocating on behalf of disabled students engaged in protected activity under

the Rehabilitation Act).

Construing his submissions liberally, Plaintiff alleges several instances of protected

activity.  In particular, Plaintiff alleges that he sent emails (1) to "his principal [Alexander-Adé]"

on repeated occasions, AC ¶ 19; (2) to the UFT "regarding the school's lack of compliance to

students' special education requirements and also regarding allegations of child endangerment,"

*id*. ¶ 12; and (3) to Superintendent Hulla on two occasions, informing her "of special-education

violations and safety risks to children, such as children left unattended in the hallways, unreported

23

incidents involving children, behavioral intervention plans that were never completed, and fabrication of documentation for students' individualized education plans" and "concerning an incident involving a student in his classroom," *id.* ¶¶ 19-21.  Plaintiff also attaches excerpts of several emails to his opposition, which reflect Special Ed Complaint and Safety/Discipline Report Forms filed with the UFT, Opp'n at A-001, A-003-12, emails Plaintiff sent to UFT Liaison Yefet, *id.* at A-020-22, an email Plaintiff sent to UFT representative Carioscia, *id.* at A-016, correspondence between Plaintiff and Alexander-Adé, *id.* at A-002, A-014-15, A-018, A-025-27, emails to the "Title IX Inquiries" DOE email address, *id.* at A-017, A-019, an email from P.S. 46 Assistant Principal Rena Westberry requesting documents for a student in his classroom, *id.* at A-023-24, and a parental notification for a Behavioral Intervention Planning/Review meeting for a student, *id.* at A-028.  A subset of Plaintiff's emails sent within P.S. 46 and to the UFT, as well as his emails to Superintendent Hulla and Title IX Inquiries, constitute protected activity for purposes of his retaliation claims.

First, accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, he adequately pleads that he engaged in protected activity through his correspondence within P.S. 46.  Putting aside Plaintiff's bald contention that he "made over a hundred" complaints "about the treatment and safety of students with special needs" at P.S. 46 during his "12 years at the school," *see* AC ¶ 11; *see also Volpe*, 195 F. Supp. 3d at 596 (finding that plaintiff's complaints about "a host of topics throughout her tenure at" her school lacked "concrete information that would permit [such complaints] to be recognized as a particularized protected activity") (alterations and internal quotation marks omitted), two of Plaintiff's emails evidence protected activity under the ADA and the Rehabilitation Act.  On November 22, 2016, Plaintiff emailed Alexander-Adé to inform her that a "Paraprofessional" was not present during school dismissal,

24

alleging that "student safety [was] being compromised." Opp'n at A-026.  Plaintiff also emailed

Alexander-Adé on January 15, 2017 informing her that Gonzalez had been "grossly negligent" in

failing to "maintain[] a safe classroom environment" while conducting a class observation, which

compromised "the safety of all students involved." *Id.* at A-002.  These emails—which, construed

liberally, memorialized complaints about the safety of special education students—constitute

protected activity under the Rehabilitation Act and the ADA. *See Volpe*, 195 F. Supp. 3d at 597

(finding that special education and safety complaints were protected activity under the

Rehabilitation Act and ADA).[7]

Plaintiff's correspondence with the UFT also suffices to establish protected activity.

Plaintiff alleges that he emailed the UFT "regarding the school's lack of compliance to students'

special education requirements." AC ¶ 12.  Additionally, Plaintiff provides two Special Ed

Complaint Forms in which he apparently informed the UFT that a student was placed in his

classroom "illegally," Opp'n at A-009, and that the school was "violating [the student's]

mandates," *id.* at A-011, as well as an email to UFT Liaison Yefet concerning violations of "Special

Education Compliance," *id.* at A-020-021.  This type of advocacy constitutes protected activity

under the ADA and the Rehabilitation Act. *See, e.g.*, *Volpe*, 195 F. Supp. 3d at 597 (stating that

---

[7] The other emails that Plaintiff submitted, however, do not plausibly allege protected activity.  Plaintiff's remaining correspondence with Alexander-Adé concerns a student who would spend the day with another teacher due to "continuous inappropriate and dangerous behavior," Opp'n at A-018, a request for a meeting, *id.* at A-014-015, a request for a statement relating to the corporal punishment allegation, *id.* at A-025, and a request that Plaintiff open a re-evaluation for another student, *id.* at A-027.  None of these emails refer to special education violations or otherwise appear to report unlawful activities under the ADA or the Rehabilitation Act.  The remaining email with P.S. 46 staff concerns an exchange with Assistant Principal Rena Westberry, in which she requests documentation relating to a student in Plaintiff's class. *Id.* at A-023-24.  Although Westberry indicates that Plaintiff had asked for "Ms. Chaikin's documentation," this email does not demonstrate that Plaintiff was "challeng[ing] actions of the [DOE] [that] violated" the ADA or the Rehabilitation Act. *Treglia*, 313 F.3d at 719.  Lastly, the parental notification for a "Behavioral Intervention Planning/Review" meeting contains no information establishing that it was protected activity.  Opp'n at A-028.

complaints about school's failure to provide support to "[special education] students with dangerous and/or violent propensities" was protected activity); *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08 Civ. 9340 (SCR), 2009 WL 2223853, at *2, *6 (S.D.N.Y. July 27, 2009) (noting that special education teachers' complaints concerning the inappropriate curriculum, lack of supplies, and inaccurate IEPs were protected activity under the ADA and Rehabilitation Act).[8]

Plaintiff's alleged emails to Superintendent Hulla—which concerned "special education violations," "behavioral intervention plans that were never completed," and "fabrication of documentation for students' individualized education plans," AC ¶ 20—also suffice to establish protected activity. *See Stahura-Uhl*, 836 F. Supp. 2d at 136, 143 (holding that plaintiff's advocacy, which included complaints that IEPs were not followed and were modified without hearings, was protected activity). For similar reasons, Plaintiff's comments in his email to the Title IX Inquiries DOE email address concerning a child that was placed in a Special Education setting "without an IEP" and against protocol, *see* Opp'n at A-017, constitute protected activity. *See Payson*, 2017 WL 4221455, at *22-24 (finding that teacher's advocacy relating to special education students' incorrect class placement was protected activity under the Rehabilitation Act). Thus, for purposes

---

[8] Plaintiff's remaining emails to the UFT, however, do not constitute protected activity. In a Special Ed Complaint Form dated January 10, 2017, for instance, Plaintiff complains about "an informal rating" that he received, but does not allege that that rating was in any way connected to discrimination against disabled students. Opp'n at A-001; *see also Natofsky*, 921 F.3d at 353-54 ("[A]ppealing a negative performance review is not a protected activity that can give rise to a retaliation claim."). Similarly, Plaintiff's January 11, 2017 email to Yefet alleges that Gonzalez was "setting [him] up for failure" by observing him under "extreme circumstances." Opp'n at A-022. Although Plaintiff asserts that Gonzalez's failure to act when a student behaved violently caused the other students to become "terrified," he does not allege that Gonzalez's actions during the observation violated any laws or discriminated against any students. *See id*. Next, in a Safety/Discipline Report Form dated February 17, 2017, Plaintiff alleges he was "falsely accused of corporal punishment by several co-workers", *id*. at A-010, and in a Special Ed Complaint Form on June 12, 2017, Plaintiff claims that a UFT member failed "to represent [his] current status," *id.* at A-012. Neither of these complaints, however, reference statutorily prohibited discrimination. Plaintiff's remaining records of "Safety/Discipline Report Forms" contain no detail aside from the dates and the general category to which the complaints pertained. *See id.* at A-003-07. Finally, in an email to UFT representative Matt Carioscia on February 8, 2017, Plaintiff merely asks Carioscia to delete some unspecified "information and email," without any context. *Id.* at A-016. Plaintiff has thus not sufficiently demonstrated that he was opposing any violations of the ADA or the Rehabilitation Act in these documents.

of his retaliation claims, Plaintiff has adequately alleged that he engaged in protected activity through his emails within P.S. 46, and to the UFT, Superintendent Hulla, and Title IX Inquiries.

### B.  Awareness of Protected Activity and Causal Connection

Plaintiff's retaliation claims under the ADA and the Rehabilitation Act nonetheless fail because he has not plausibly alleged that Defendants were "aware of [his protected] activity," or that "a causal connection exists between the[ir] alleged adverse action[s] and [his] protected activity." *Morey*, 794 F. App'x at 33.  With respect to Plaintiff's complaints to the UFT, the Special Ed Complaint Forms concerning students improperly placed in his classroom are prefaced with a bolded statement stating, "[w]e will not share your name or any information that you provided with administrative, supervisory or managerial personnel in the Department of Education without your approval."  *See* Opp'n at A-009, A-011.  This counsels against an inference that Defendants would have been aware of these complaints, or would have known that they came from Plaintiff in particular.  Moreover, no one from P.S. 46 or the DOE appears to have been copied on Plaintiff's emails to the UFT.  *See, e.g., id.* at A-021.  Accordingly, "Plaintiff has not pled facts demonstrating that DOE was 'aware of this activity,'" and thus, the claim must be dismissed.  *Lam v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 2756 (PGG), 2019 WL 2327655, at *12 (S.D.N.Y. May 30, 2019).

Plaintiff also does not allege that any of the Defendants—or anyone at P.S. 46 in particular—was aware that he had emailed Superintendent Hulla or the DOE's Title IX Inquiries email address.  *See* AC ¶¶ 19-21; Opp'n at A-017; *see also Glascoe v. Solomon*, No. 18 Civ. 8284 (AT), 2020 WL 1272120, at *9 n.8 (S.D.N.Y. Mar. 17, 2020) (dismissing Title VII retaliation claim where plaintiff did not plead "that [her principal] was aware of the complaint, or [provide] any facts that link[ed] her complaint to Defendants' decision to fire her").  It is true that Superintendent Hulla is an employee of the DOE, and that the Title IX Inquiries email account was presumably

27

monitored by employees of the DOE.  And in the Title VII context, the Second Circuit has stated

that such "general corporate knowledge that the plaintiff has engaged in a protected activity" is

sufficient for purposes of a retaliation claim.  *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116

(2d Cir. 2000).  But even assuming that Plaintiff's allegations are sufficient to satisfy this second

prong, he nevertheless fails to allege a "causal connection" between these emails and any of the

alleged retaliatory acts.  *See Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of

Med.*, No. 11 Civ. 8934 (AJN), 2014 WL 896744, at *11 (S.D.N.Y. Mar. 3, 2014) (noting that,

notwithstanding the Second Circuit's decision in *Gordon*, a "lack of knowledge by decision-

makers undercuts a claim of a causal connection").  Although Plaintiff alleges that he received a

"letter to file" "[s]everal days after" he emailed Hulla, and on the same day as his email to Title

IX Inquiries, *see* AC ¶ 22; Opp'n at A-017, his emails demonstrate that the investigation relating

to the disciplinary charges was already in progress in December 2016, over a month before he

purportedly engaged in these protected activities, *see* Opp'n at A-025.  *See also Lawtone-Bowles

v. City of New York*, No. 17-CV-8024, 2019 WL 652593, at *5 (S.D.N.Y. Feb. 15, 2019) ("[W]here

the pleadings reveal adverse [disciplinary] actions [that] were both part, and the ultimate product,

of an extensive period of progressive discipline that began before any protected activity, the Court

will not infer retaliatory animus based on temporal proximity alone.") (internal quotation marks

and citation omitted).

Plaintiff's retaliation claims based on his January 2017 email to Alexander-Adé fail for

similar reasons.  Although Defendants would necessarily have been aware of this email, Plaintiff

does not plausibly allege any causal connection between this complaint and the disciplinary

investigation, which was already underway in December 2016.  *See* Opp'n at A-025.  Finally,

although Plaintiff's November 2016 email to Alexander-Adé is closer in temporal proximity to the

investigation into the October 5, 2016 incident, that email still does not make plausible the inference that the investigation occurred as a result of his November email, and not in response to the October 5, 2016 incident itself.  Indeed, Plaintiff does not appear to allege otherwise in the Amended Complaint.  *See* AC ¶ 18 ("Following *[the] incident*, Defendants . . . conducted an investigation into Plaintiff's conduct.") (emphasis added); *see also Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 336 (S.D.N.Y. 2010) (holding that plaintiff failed to state a *prima facie* case for Title VII retaliation because plaintiff's "problems at work began long before she engaged in any protected activity, and without direct evidence of retaliatory animus on behalf of Defendant, mere proximity in time [could not] give rise to an inference of retaliation").

Finally, the 15-day suspension is simply too attenuated from Plaintiff's November 2016 and January 2017 emails to Alexander-Adé, or to his January 2017 emails to Superintendent Hulla and the DOE's Title IX Inquiries email address, to establish any causal connection.  *See Graham v. Macy's, Inc.*, No. 14 Civ. 3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016) (explaining that courts in the Second Circuit "generally hold that a gap longer than two months severs the inferred causal relationship").  Plaintiff's retaliation claims based on these emails thus fail.

Accordingly, Plaintiff's claims for retaliation under the ADA and Rehabilitation Act are dismissed.[9]

---

[9] Plaintiff's ADA and Rehabilitation Claims are dismissed against Defendants Alexander-Adé and Gonzalez for the separate reason that individuals cannot be held personally liable under these statutes.  *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (ADA); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Rehabilitation Act).  Although the Second Circuit has not settled whether individuals may be sued in their *official* capacities under the ADA or the Rehabilitation Act, *see Cosby v. Rusi*, No. 20-CV-459 (MPS), 2020 WL 3577482, at *5 (D. Conn. July 1, 2020), Plaintiff's ADA and Rehabilitation claims against Defendants Alexander-Adé and Gonzalez are nonetheless "wholly redundant" to his claims against the DOE, *see Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823, at *41 (S.D.N.Y. Mar. 29, 2019).  They are thus dismissed with prejudice regardless of whether they are asserted against these defendants in their "individual" or "official" capacities.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is granted. Plaintiff's claims against the individual defendants are dismissed with prejudice. In light of his *pro se* status, the Court will permit Plaintiff one final attempt to amend his complaint with respect to the DOE, to the extent he has a good faith basis to do so. Should he choose to amend his ADEA claims, Plaintiff must allege with specificity the "lead teacher" positions he applied for and was rejected from within P.S. 46, including when he applied to such positions, as well as facts giving rise to an inference of age discrimination on the part of the DOE. Should he amend his claims under the ADA and the Rehabilitation Act, Plaintiff must plead facts from which the Court may infer a causal connection between Plaintiff's advocacy on behalf of special education students and the adverse employment actions allegedly taken against him. Plaintiff's second amended complaint shall be filed no later than September 28, 2020.

SO ORDERED.

Dated:   July 28, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge

---

*See id.* (collecting cases and dismissing ADA and Section 504 claims against individuals in their official capacity because they were redundant to claims against the school district).