UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERRY LOPEZ,

    Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

    Defendant.

17-CV-9205 (RA) (BCM)

**SANCTIONS ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

  After agreeing to a pre-discovery settlement conference, and then postponing the conference to "seek settlement authorization and prepare for mediation," defendant New York City Department of Education (DOE), represented by the New York City Law Department (Law Department), violated this Court's Order Scheduling Settlement Conference (Scheduling Order) (Dkt. 72) by appearing at the conference through representatives who had no authority to offer a penny more than DOE's pre-conference offer. When this information came to light (several hours into the conference), and when the attorney in attendance was unable to obtain any actual settlement authority from her absent Law Department supervisor, the Court had no choice but to adjourn the conference. Because defendant's conduct violated the unambiguous terms of the Scheduling Order, and because its failure to send a representative with real settlement authority rendered it unprepared for the conference and unable to participate in good faith, DOE and the Law Department will be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(B) and (C).

## Background

  Plaintiff Perry Lopez is a retired New York City public school teacher who filed this action *pro se* five and a half years ago, on November 22, 2017. (Dkt. 1.) After two rounds of motion practice, which produced two written decisions (*see* Dkts. 22, 44), plaintiff filed his Second

Amended Complaint (Dkt. 49) on October 28, 2020, alleging that he was denied promotion based on his age, and that he was harassed and unfairly disciplined in retaliation for his advocacy on behalf of students with special needs. Defendants again moved to dismiss (Dkt. 56), and on January 12, 2023, the Hon. Ronnie Abrams, United States District Judge, ruled on that motion from the bench, dismissing some of plaintiff's claims but permitting him to proceed against DOE on his age discrimination claim under the ADEA and his retaliation claims under the ADA and the Rehabilitation Act. *See* Tr. of Jan. 12, 2023 Conf. (Tr.) (Dkt. 73) at 3:5-10:10.

Noting that the parties had not yet commenced discovery, which would be expensive, Judge Abrams asked whether they were amenable to a pre-discovery mediation or settlement conference. Tr. at 11:13-16. Both parties stated that they were interested in settlement. *Id*. at 11:19-22. Judge Abrams then referred the case to me for that purpose (Dkt. 71), directing the parties to submit a proposed case management plan only if the settlement conference proved unsuccessful. Tr. at 11:23-12:11.

On January 31, 2023, I issued the Scheduling Order, which set the settlement conference for March 1, 2023 and required, among other things:

- That each party "attend the settlement conference in person, accompanied by that party's lead trial attorney," Sched. Order ¶ 1; and

- That a governmental entity or other non-natural party send "a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization." *Id*. ¶ 1(a).

The Scheduling Order warned that "[i]f a party fails to attend the settlement conference with all of the required persons, that party may be required to reimburse all of the other parties for their time and travel expenses or face other sanctions." *Id*. ¶ 1(d).

2

The Scheduling Order also required the parties to submit confidential settlement letters in advance of the conference, via email, after engaging in good-faith negotiations:

> The purpose of a Court-facilitated settlement conference is to settle the case – not simply to begin a settlement dialog. The Court normally holds only one settlement conference per case. **The Court therefore requires that, promptly after receipt of this Order, the parties conduct at least one good-faith settlement discussion, in person or by telephone, and that each party convey to each opposing party at least one good-faith settlement demand or offer, in advance of the deadline, set forth below, for submitting [their] confidential settlement letters. Past settlement negotiations may not be relied upon to satisfy this requirement**.

Sched. Order ¶ 2 (emphasis in the original). *See also id*. ¶ 3 (explaining the Court's requirements for the confidential settlement letters); *id*. ¶ 4 (directing lead counsel to submit Acknowledgment Forms confirming that they will be accompanied by client representatives who are "decision-maker[s] with . . . responsibility for determining the amount of any ultimate settlement").

On February 23, 2003, DOE requested an adjournment of the settlement conference, explaining that it had received plaintiff's settlement demand later than expected "and requires additional time in order to seek settlement authorization and prepare for mediation." (Dkt. 77.) I granted the request and rescheduled the conference for April 27, 2023. (Dkt. 79.)

On April 19, 2023, DOE submitted its confidential settlement letter and Acknowledgment Form, both signed by Assistant Corporation Counsel Traci Krasne, who joined the Law Department in November 2022 and had not previously appeared in this action. By signing the form (as "lead trial counsel"), Ms. Krasne acknowledged her "obligation to attend the settlement conference in this action in person, accompanied by . . . a client representative . . . who is a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement." Counsel identified two client representatives: an Agency Attorney from DOE and a Senior Attorney from the Office of the New York City Comptroller (Comptroller). In her accompanying settlement letter, Ms. Krasne wrote that at some point in the past (before she was

3

assigned to the case), plaintiff made a settlement demand, which DOE rejected as "excessive and unrealistic." Nonetheless, the letter assured the Court that DOE would "have settlement authority on the day of mediation."

That same day, in a publicly-filed letter (April 19 Ltr.) (Dkt 81), DOE requested permission for the Comptroller's representative to be available by phone, rather than attend the settlement conference in person, explaining that "this request will not hinder settlement discussions and the conference can, and should, proceed as scheduled." April 19 Ltr. at 1. Counsel reaffirmed that defendant "will have representatives from the DOE present at the conference, who will be authorized to approve, for the DOE, the amount of any settlement that may be reached." *Id*. I granted the application. (Dkt. 82.)

By Order dated April 26, 2023 (April 26 Order) (Dkt. 83), I noted that there was no indication in either party's confidential settlement letter that they had actually exchanged concrete settlement proposals, as required by the Scheduling Order. April 26 Order at 1-2. Consequently, I directed the parties to conduct a discussion and "exchange[] at least one good-faith demand and offer, *before* the Court-facilitated settlement conference begins." *Id*.

## The Settlement Conference

Ms. Krasne appeared for the settlement conference accompanied by Donna Silverglad, an attorney employed by DOE (in person) and Britton Kovachevich, an attorney employed by the Comptroller (by telephone). At the outset of the conference, the parties informed the Court that they had in fact "exchanged" settlement positions, in that DOE had responded to plaintiff's demand with a modest pre-conference offer. Although the parties were far apart, they confirmed that they were prepared to negotiate further.

After an initial joint session, I caucused separately with each party. During the first DOE caucus, Ms. Krasne, Ms. Silverglad, and Mr. Kovachevich agreed that defendant should improve its offer, but wished to confer privately before providing a specific figure. I then caucused with plaintiff Lopez, who (in anticipation of a genuine negotiation) lowered his demand. At the next DOE caucus, however, Ms. Krasne informed the Court that her supervisor at the Law Department had declined to provide any further settlement authority. This was the Court's first inkling that the DOE representatives attending the conference lacked the authority to settle the case on their own. When I asked Ms. Krasne whether she, Ms. Silverglad, or Mr. Kovachevich had *any* independent authority to negotiate a settlement with the plaintiff, she said that they did not.

I reminded the DOE representatives that governmental parties, like corporations, are required to send "a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization." Sched. Order ¶ 1(a). I further reminded them that a party's failure to send a representative with the required authority was sanctionable. *See id*. ¶ 1(d). I then gave them another opportunity to confer privately among themselves and make any necessary phone calls. At the conclusion of that period, however, Ms. Krasne again reported that her supervisor would not provide any further settlement authority. At the Court's request, she identified her supervisor as Bruce Rosenbaum, a more experienced Assistant Corporation Counsel. Mr. Rosenbaum has never appeared in this action and did not attend the settlement conference. According to Ms. Krasne, Mr. Rosenbaum believed that it would be unwise for DOE to put any more money on the case prior to discovery.

Unable to proceed further, I adjourned the conference.

**Discussion**

Rule 16(f) of the Federal Rules of Civil Procedure authorizes a district court, "[o]n motion or on its own," to issue "any just orders" if a party or its attorney "fails to appear at a scheduling or other pretrial conference," is "substantially unprepared to participate – or does not participate in good faith – in the conference," or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(A)-(C). These provisions apply fully to pretrial settlement conferences. *See*, *e.g.*, *Thrane v. Metropolitan Transp. Auth.*, 2018 WL 840043, at *4 (E.D.N.Y. Feb. 12, 2018) (sanctioning defendant for failing to send "someone with full settlement authority" to judicially supervised settlement conference as required by magistrate judge's scheduling order); *Luo v. Panarium Kissena Inc.*, 2018 WL 5269996, at *1 (E.D.N.Y. July 3, 2018) (sanctioning plaintiffs for appearing at settlement conference "without any calculation of their damages"); *Kerestan v. Merck & Co. Long Term Disab. Plan*, 2008 WL 2627974, at *1 (S.D.N.Y. July 2, 2008) (sanctioning plaintiff because his "guardian/conservator did not appear at the settlement conference as ordered," leaving counsel "without a client or authorization to proceed with settlement"); *Bulkmatic Transp. Co. v. Pappas*, 2002 WL 975625, at *2-4 (S.D.N.Y. May 9, 2002) (sanctioning defendant's counsel for failing to attend mediation).

No showing of bad faith is required to impose sanctions under Rule 16(f)(1)(C). *Hamilton Int'l Ltd. v. Vortic LLC*, 2018 WL 5292128, at *2 (S.D.N.Y. Oct. 25, 2018). "The fact that a pretrial order was violated is sufficient to allow some sanction." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 366-67 (E.D.N.Y. 2013) (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531 (3d ed. 2010)). Moreover, "[b]ecause sanctions pursuant to Rule 16(f) fall within the scope of pretrial matters, magistrate judges are well within their

authority to impose such sanctions." *Grenion v. Farmers Ins. Exch.*, 2014 WL 1284635, at *4 (E.D.N.Y. Mar. 14, 2014).

"Although a court cannot force litigants to settle an action," *Bulkmatic*, 2002 WL 975625, at *2, it is well established that a court can require that the attorneys and/or client representatives attending a settlement conference possess actual settlement authority, and impose sanctions if – as in this case – it becomes clear that they do not. *See*, *e.g.*, *Negron v. Woodhull Hosp.*, 173 F. App'x 77, 79 (2d Cir. 2006) (summary order) (district court "properly required that the Hospital pay the expenses incurred in preparing for the mediation" after finding that it violated the court's mediation order "by failing to bring a principal party with settlement authority to the mediation"); *Hamilton Int'l*, 2018 WL 5292128, at *2 (S.D.N.Y. Oct. 25, 2018) (sanctioning plaintiff Hamilton for failing to produce its pre-designated corporate representative and instead producing a substitute representative, whose settlement authority was questionable); *Thrane*, 2018 WL 840043, at *4 n.7 (holding that magistrate judge properly sanctioned defendants for "failure to participate in good faith under Rule 16(f)(1)(B)," and that sanctions "were also justified under Rule 16(f)(1)(C) because defendants violated the magistrate judge's order" by sending a representative who was instructed by his superior "not to budge from the initial offer"); *Grenion*, 2014 WL 1284635, at *6 (sanctioning defendant Farmers for "dispatch[ing] a representative" who "lack[ed] authority to change the settlement position of the corporation"); *Zalisko v. MTA New York City Transit*, 2010 WL 3185685, at *1 (S.D.N.Y. Aug. 12, 2010) (sanctioning defendant after its counsel appeared at the settlement conference with "*no* authority" to offer a settlement) (emphasis in the original).

As Judge Peck explained in *Zalisko*, a defendant is free to take a "no pay" position. 2010 WL 3185685, at *1. But it is not free to waste the time and resources of the court and the opposing party by staffing a settlement conference with an attorney who has "no authority" to do anything

7

else. *Id*. Similarly, while a defendant is free to drive a hard bargain, it is not free to staff a settlement conference with an attorney who has no authority to bargain at all. *Thrane*, 2018 WL 840043, at *4; *see also Grenion*, 2014 WL 1284635, at *5 (Farmers was "within its rights" to refuse to make a settlement offer, but its decision to send a representative with "illusory 'settlement authority'" to the conference, who "lacked the authority to change Farmer's position," was "out of bounds").

In this case, as in *Thrane*, *Grenion*, and *Zalisko*, defendant was expressly required to send a representative with full authority. *See* Sched. Order ¶ 1(a) (defendant must send "a decision-maker" with "responsibility for determining the amount of any ultimate settlement"). Ms. Krasne reaffirmed that obligation when she signed the Acknowledgment Form as DOE's lead trial counsel, and reiterated, in writing, that the DOE representative at the conference would be "authorized to approve, for the DOE, the amount of any settlement that may be reached." April 19 Ltr. at 1. At the conference, however, Ms. Krasne conceded that neither she nor her client representatives had the authority to increase DOE's pre-conference offer without approval from her absent supervisor. Moreover, as in *Thrane*, that supervisor gave Ms. Krasne instructions "not to budge from the initial offer." 2018 WL 840043, at *3.

By failing to send a representative with settlement authority, as directed by the Court, DOE violated the Scheduling Order, which warrants sanctions pursuant to Rule 16(f)(1)(C), and was "substantially unprepared to participate" in the conference, which warrants sanctions pursuant to Rule 16(f)(1)(B). Moreover, by concealing its representatives' lack of authority – thereby allowing plaintiff to believe that he was engaged in a genuine negotiation – DOE failed to participate in good faith, which also warrants sanctions pursuant to Rule 16(f)(1)(B). I note as well that DOE clearly understood that this was a pre-discovery settlement conference. If it was unwilling to

negotiate without first taking discovery, it should have so advised the Court in time to cancel the settlement conference and put that time to better use.

The Court understands that settling a lawsuit on behalf of a New York City agency is a complex process which may involve more than one decision-maker. That reality, however, does not exempt the City, the DOE, or the Law Department from compliance with the crucial (and near-universal) requirement that the representatives they send to settlement conferences be authorized to settle. Nor does it exempt them from Rule 16(f)(1) sanctions if they fail to do so. *See Grenion*, 2014 WL 1284635, at *6 (sanctioning Farmers, notwithstanding that it approached settlement in accordance with the usual "process at the company," because a company "cannot implement an internal process or policy that excuses it from compliance with court orders").

The Court further understands that there is no guarantee that the case would have settled had DOE sent Mr. Rosenbaum (or another representative with genuine authority) to the conference. As noted above, the parties were far apart, and even a fully-authorized DOE representative, after hearing plaintiff's presentation and discussing the matter in good faith with the magistrate judge, may have declined to offer a figure acceptable to plaintiff. It is well-settled, however, that "no harm, no foul" is not a defense to Rule 16(f)(1) sanctions. *See Hamilton Int'l*, 2018 WL 5292128, at *2 (rejecting "no harm, no foul" defense because "[t]he Court expects parties to comply with its orders"). Moreover, as Judge Block explained in *Thrane*, defendant's violation did not merely waste the time and resources of plaintiff and the Court; it sabotaged the process, to the detriment of both parties:

> Plaintiff appeared at the conference with the requested settlement authority. Defendant[] did not. Perhaps plaintiff would have been coaxed from his position during the course of good faith settlement discussions; he was denied that opportunity by their gamesmanship.

2018 WL 840043, at *4.

## Conclusion

In both *Thrane* and *Zalisko*, the court imposed sanctions of $1000, *sua sponte*, upon the party that failed to send a representative with "full authority" to the settlement conference.[1] In *Grenier*, acting on plaintiff's motion, the court ordered defendant pay $4,185 to plaintiff's counsel, representing attorneys' fees and other expenses incurred as a result of the misconduct, and another $4,185 to the Clerk of Court. 2014 WL 1284635, at *9 (noting that "[a] monetary penalty paid to the court has the added benefit[] of . . . helping to offset the costs imposed on public institutions by dilatory conduct").

Here, because plaintiff is representing himself *pro se*, he incurred no attorneys' fees in connection with the failed settlement conference. However, he was required to travel to Manhattan from his home in New Jersey. I therefore conclude that the appropriate sanction, pursuant Fed. R. Civ. P. 16(f)(1)(B) and (C), is the sum of $1100, for which DOE and the Law Department are jointly responsible. $1000 shall be paid to the Clerk of Court, and $100 shall be paid directly to plaintiff. Payment shall be made within 30 days of this Order.

Dated: New York, New York
       May 4, 2023

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[1] In *Zalisko*, the sanction was payable to the Clerk of Court. 2010 WL 3185685, at *1. In *Thrane*, the magistrate judge whose order was violated and whose time was wasted initially assessed a sanction of $250. 2018 WL 840043, at *4. After defendants filed a "baseless objection" to that decision, "further wast[ing] the time and resources of the Court and the plaintiff," the district judge increased the sanction to $1000, payable to plaintiff's counsel. *Id.* at *5.