UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PERRY LOPEZ,

            Plaintiff,

-v-                                          No. 17-CV-9205-LTS-BCM

NEW YORK CITY DEPARTMENT OF
EDUCATION,

            Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

Before the Court is an objection, filed by the New York City Department of Education (the "DOE") pursuant to Federal Rule of Civil Procedure 72(a) (docket entry no. 99 (the "Objection")), to a Sanctions Order entered by Magistrate Judge Barbara Moses on May 4, 2023 (docket entry no. 85 (the "Sanctions Order")). The DOE has also moved to file the unredacted Objection and accompanying exhibits (docket entry no. 100 ("Unredacted Objection")) ex parte and under seal. (Docket entry no. 95 (the "Motion to Seal").) After careful consideration of the Sanctions Order and the DOE's submissions,[1] the Court (i) grants the DOE's Motion to Seal and (ii) overrules the DOE's Objection.

## BACKGROUND

Plaintiff Perry Lopez is a retired New York City public school teacher who filed the instant employment discrimination action pro se in November 2017. (See docket entry no.

---

[1] The DOE represents that copies of the Motion to Seal and the Objection (with the DOE's proposed redactions) were sent to Plaintiff by email and first-class mail. (Motion to Seal at 4.) Mr. Lopez did not file a response to either the Motion to Seal or the Objection.

1.)  After the Court dismissed the Complaint and the First Amended Complaint in written decisions (docket entries no. 22, 44), Mr. Lopez filed a Second Amended Complaint (docket entry no. 49).  The DOE moved to dismiss the Second Amended Complaint (docket entry no. 56), and Judge Abrams, who previously presided over the above-captioned case, granted in part and denied in part that motion in an oral ruling from the bench (docket entry no. 73 at 3:5-10:20).

During that hearing, Judge Abrams referred the case to Magistrate Judge Moses to conduct a pre-discovery settlement conference (the "Settlement Conference").  (See docket entry no. 71.)  Judge Moses subsequently entered a Scheduling Order (docket entry no. 72) that set the Settlement Conference for March 1, 2023, and required, among other things:

- That each party "attend the settlement conference in person, accompanied by that party's lead trial attorney," and

- That a governmental entity send "a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization."

(Scheduling Order ¶¶ 1, 1.a.)  The Scheduling Order warned that "[i]f a party fails to attend the settlement conference with all of the required persons, that party may be required to reimburse all of the other parties for their time and travel expenses or face other sanctions."  (Id. ¶ 1(d).)  A week before the Settlement Conference was initially scheduled, the DOE requested, and Judge Moses granted, an adjournment until April 27, 2023, because the DOE "require[d] additional time in order to seek settlement authorization and prepare for mediation."  (Docket entries no. 77, 79.)

To seek settlement authorization in cases like this, the DOE must follow the case settlement procedures established by the New York City Law Department (the "Law Department").  (See Objection at 15.)  Section 93(i) of the New York City Charter provides that

"the comptroller shall have the power to settle and adjust all claims in favor of or against the city." Further, Section 394(a) of the Charter provides that "the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested," including the power to settle cases brought seeking monetary relief. However, this power is limited by a separate provision of section 394, which makes clear that Corporation Counsel lacks the power to settle a case absent Comptroller approval: "The corporation counsel shall not be empowered to compromise, settle or adjust any rights, claims, demands, or causes of action in favor of or against the city, and shall not permit, offer or confess judgment against the city or accept any offer of judgment in favor of the city without the previous approval of the comptroller[.]" N.Y. City Charter § 394(c). To comply with the New York City Charter and to "ensure[] responsibility, proper controls, and accountability for decisions on how the public fisc is utilized," the Assistant Corporation Counsel ("ACC") in charge of a matter must undertake the steps of the "process for obtaining settlement authority internally at the Law Department and from the Comptroller's Office . . . in advance of any scheduled settlement conference or mediation." (Objection at 7 (emphasis added.)) In her declaration, ACC Traci Krasne ("Ms. Krasne") attests that she complied with the standard Law Department process for obtaining authority to settle the above-captioned case. (See docket entry no. 96 ("Krasne Decl.") ¶ 14.)

On April 19, 2023, DOE submitted its confidential settlement letter and Acknowledgment Form, both signed by Ms. Krasne, who joined the Law Department in November 2022 and had not previously appeared in this action. By signing the form as "lead trial counsel[,]" Ms. Krasne acknowledged her "obligation to attend the settlement conference in this action in person, accompanied by . . . a client representative . . . who is a decision-maker

with knowledge of the case and responsibility for determining the amount of any ultimate settlement." (Sanctions Order at 3.) Ms. Krasne also "identified two client representatives: an Agency Attorney from the DOE and a Senior Attorney from the Office of the New York City Comptroller." (Id.) In her accompanying settlement letter, Ms. Krasne wrote that, before she was assigned to the case, Mr. Lopez had made a settlement demand that the DOE rejected as "excessive and unrealistic." (Id. at 3-4.) Nonetheless, the letter assured the Court that the DOE would "have settlement authority on the day of mediation." (Id. at 4.) Later that day, the DOE requested permission for the Comptroller's representative to be available by phone instead of in-person and assured Judge Moses that "this request will not hinder settlement discussions and the conference can, and should, proceed as scheduled." (Docket entry no. 81 at 1.) The DOE also reaffirmed that "representatives from the DOE [would be] present at the conference, who [would] be authorized to approve, for the DOE, the amount of any settlement that may be reached." (Id.) Judge Moses granted the request. (Docket entry no. 82.) A week later—the day before the Settlement Conference was scheduled—Judge Moses directed the parties to conduct a discussion and "exchange[] at least one good-faith demand and offer, before the Court-facilitated settlement conference begins." (Docket entry no. 83.)

Ms. Krasne appeared for the settlement conference accompanied by Donna Silverglad, an attorney employed by the DOE (in person) and Britton Kovachevich[2], an attorney employed by the Comptroller (by telephone). (Sanctions Order at 4.) At the start of the conference, the parties informed the Court that they had in fact "exchanged" settlement

---

[2] Ms. Krasne attests that, because the pre-conference settlement offer provided to Plaintiff was the maximum amount for which she had received settlement authority from the Comptroller, "the sole purpose of Mr. Kovachevich's confirmed availability by telephone was to authorize additional authority if circumstances warranted such an increase." (Krasne Decl. ¶¶ 20-21.)

positions; the DOE had responded to plaintiff's demand with a modest pre-conference offer. (Id.)  The parties confirmed that they were prepared to negotiate further, even though their pre-conference offers were far apart.  (Id.)  Indeed, after the initial joint session, during the DOE's first separate caucus with Judge Moses, counsel stated "that defendant should improve" the offer that the DOE made prior to the Settlement Conference, "but wished to confer privately before providing a specific figure."  (Id. at 5.)  However, after Mr. Lopez lowered his demand during his own private caucus with Judge Moses, "Ms. Krasne informed the Court that her supervisor at the Law Department had declined to provide any further settlement authority" at the next DOE caucus.[3]  (See id.)  Indeed, when Judge Moses asked whether any of the defense counsel present at the Settlement Conference "had any independent authority to negotiate a settlement with the plaintiff," Ms. Krasne "said that they did not."  (Id.)

In response, Judge Moses reminded the DOE representatives that, under the Scheduling Order, government entities were required to send "a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization" to the Settlement Conference, and that "a party's failure to send a representative with the required authority was sanctionable."  (Sanctions Order at 5.)  Judge Moses gave DOE one more "opportunity to confer privately among themselves and make any necessary phone calls."  (Id.)  However, "Ms. Krasne again reported that her supervisor would not provide any further settlement authority" because he

---

[3]  The Court has thoroughly reviewed and considered the reasons that the DOE has provided, in the Unredacted Objection, to explain why counsel did not receive increased settlement authority at this time.  (Unredacted Objection at 10-13.)

"believed that it would be unwise for DOE to put any more money on the case prior to discovery." (Id.)[4] Judge Moses adjourned the conference and subsequently issued the Sanctions Order. (Id. at 1 ("Because defendant's conduct violated the unambiguous terms of the Scheduling Order, and because its failure to send a representative with real settlement authority rendered it unprepared for the conference and unable to participate in good faith, [the] DOE and the Law Department will be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(B) and (C).").)

## Discussion

Motion to Seal

The Court first addresses the DOE's request for sealed filing of the Unredacted Objection. To determine whether documents can be filed under seal, the Court balances the weight of the presumption of public access to the documents against the competing confidentiality interest. See United States v. Amodeo, 71 F.3d 1044, 1048, 1050 (2d Cir. 1995). When weighing any countervailing interests against public access, the Court considers "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006) (citations omitted). Documents may be sealed if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (citations omitted).

The DOE publicly filed its memorandum (docket entry no. 99) and accompanying declarations (docket entries no. 96, 97, 98) in support of its Objection with extensive redactions; the unredacted versions of these documents were filed ex parte and under seal (docket entry no.

---

[4] The Court has thoroughly reviewed and considered the reasons that the DOE has provided, in the Unredacted Objection, to explain why counsel did not receive increased settlement authority in response to Judge Moses' follow-up inquiry. (Unredacted Objection at 11-13.)

100). These redactions cover material reflecting (i) internal processes set by the Law Department to evaluate cases and seek settlement authority in compliance with the New York City Charter, (ii) confidential statements made during the DOE's private caucuses with Judge Moses at the Settlement Conference, and (iii) confidential statements made among the DOE representatives at the Settlement Conference.

Continued sealing of all the redacted material is appropriate here. All of the redactions are related to preparation for and participation in a settlement conference. "The presumption of public access in the case of settlement conferences is . . . very low indeed, if not nonexistent." United States v. Town of Moreau, N.Y., 979 F. Supp. 129, 135 (N.D.N.Y. 1997), aff'd sub nom. United States v. Glens Falls Newspapers, Inc., 160 F.3d 853 (2d Cir. 1998). The DOE's interest in privacy related to its internal processes and statements made during a confidential settlement conference, in contrast, is certainly high. Especially where, as here, "the information at issue does not concern a finalized settlement agreement, but merely relates to an offer of settlement that has been made[,]" the "interest in maintaining . . . confidentiality . . . outweighs the applicable presumption of public access." Delollis v. Fuchs, No. 12-CV-2331-DRH-AKT, 2012 WL 5867370, at *2 (E.D.N.Y. Nov. 16, 2012). Because the proposed redactions are necessary to preserve the confidentiality of the Settlement Conference and the preparations leading up to it, the DOE's request for continued sealing is granted in its entirety.

Rule 72(a) Objection

The Court now turns to the DOE's objection to Judge Moses' Sanctions Order. A party may file an objection to an order issued by a magistrate judge with a district judge within 14 days of service of a copy of that order. FED. R. CIV. P. 72(a). The district judge shall not disturb the order unless such "order is clearly erroneous or contrary to law." 28 U.S.C.A.

§ 636(b)(1)(A) (Westlaw through P.L. 119-5).  A ruling is "clearly erroneous where on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed."  Equal Emp't Opportunity Comm'n v. Teamsters Loc. 804, No. 04-CV-2409-LTS, 2006 WL 44023, at *1 (S.D.N.Y. Jan. 9, 2006) (internal quotation marks and citations omitted).  An order is considered to be "'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'"  Collens v. City of N.Y., 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (citation omitted).  However, "[t]he fact that 'reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision.'"  Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc., No. 04-CV-3531-LTS-SLC, 2023 WL 8112804, at *1 (S.D.N.Y. Nov. 21, 2023) (citation omitted).

    There is no dispute that, when the Settlement Conference commenced, Ms. Krasne did not have authority to settle for an amount greater than the initial, pre-conference offer.  (Sanctions Order at 1; see Objection at 9.)  The Scheduling Order plainly required that a "government entity. . . send a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization."  (Scheduling Order ¶ 1.a.)  In light of the deferential standard of Rule 72(a), the Court does not make a de novo determination regarding whether the DOE complied with this provision of the Scheduling Order, or whether the DOE participated in the Settlement Conference in good faith.  Instead, to prevail, the DOE must establish that the Sanctions Order was clearly erroneous or contrary to law.  The Court considers each of the DOE's three arguments in turn.

    First, the DOE asserts that Ms. Krasne complied with the Law Department's

internal policy for seeking authority to settle a case. This may be true, but compliance with an internal policy does not excuse non-compliance with a Court order. See Grenion v. Farmers Ins. Exch., No. 12-CV-3219-JS-GRB, 2014 WL 1284635, at *6 (E.D.N.Y. Mar. 14, 2014) (sanctioning defendant, notwithstanding that it approached settlement in accordance with the usual "process at the company," because a company "cannot implement an internal process or policy that excuses it from compliance with court orders"). If it was not possible for the DOE to comply with both the Scheduling Order and its internal policy, it should have notified the Court and requested a modification of the order prior to the Settlement Conference. The DOE did not comply with Judge Moses' order; the judge acknowledged "that settling a lawsuit on behalf of a New York City agency is a complex process which may involve more than one decision-maker" and sanctioned the non-compliant behavior. (Sanctions Order at 9.)

Second, the DOE insists that the representatives in attendance at the Settlement Conference "were prepared to participate . . . and participated in good faith." (Objection at 16.) As an initial matter, "[i]n deciding whether a sanction is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 366 (E.D.N.Y. 2013) (citation omitted). The DOE does not assert that "a person who decides what settlement authority to give to counsel" was present at the Settlement Conference as required by the plain language of Judge Moses' order. (Scheduling Order ¶ 1.a.) Instead, the DOE only claims that the counsel present at the conference would have been "able to obtain additional authority if circumstances warranted it" but ultimately decided that an increase in settlement authority was not justified. (Objection at 2.) Judge Moses' conclusion that this behavior was not sufficient to comply with the Scheduling Order—which explicitly states that "a government entity" must send

"a person who decides what settlement authority to give to counsel," not "a person who has received, or must seek, authority from someone else within the organization" to the Settlement Conference (Scheduling Order ¶ 1.a)—is not clearly erroneous or contrary to law.

Third, the DOE argues that "the cases cited in the Sanctions Order do not support an award of sanction under the facts of this case." (Objection at 20.) The cases cited in the Sanctions Order held that Rule 16(f) sanctions were appropriate where, as here, a magistrate judge determined that a party failed to participate in a settlement conference in good faith or otherwise comply with a scheduling order. See, e.g., Thrane v. Metro. Transp. Auth., No. 15-CV-4718-FB-LB, 2018 WL 840043, at *4 (E.D.N.Y. Feb. 12, 2018) ("A court may impose sanctions under Federal Rule of Civil Procedure 16(f)(1) if a party or attorney either '(B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order.'"). The DOE's argument that other cases—in which courts in this circuit overturned a magistrate judge's imposition of sanctions—are "more analogous" to the facts here (Objection at 22-25) are insufficient to demonstrate that the Sanctions Order was clearly erroneous or contrary to law.

Indeed, the cases cited by the DOE (Objection at 22-25) concern circumstances that are distinguishable from those here. For instance, the DOE cites In re A.T. Reynolds & Sons, Inc., 452 B.R. 374 (S.D.N.Y. 2011), a case in which the district court reversed the bankruptcy court's imposition of sanctions on a party after mediation. However, in that case, "[t]he [m]ediator made no findings regarding [counsel's] authority to settle the case" and the record was "unambiguous that [the counsel present] had full authority to settle the matter." Id. at 379, 384. Here, Judge Moses explicitly found that the DOE failed "to send a representative with real settlement authority" to the Settlement Conference, in violation of her Scheduling Order.

(Sanctions Order at 1.) The DOE's citation to Mei Ling Lin v. City of New York, No. 14-CV-9994-PAE-AJP, 2016 WL 6962536 (S.D.N.Y. Nov. 28, 2016) is also misplaced. In that case, the district court overturned a magistrate judge's imposition of Rule 11 sanctions because the relevant conduct "did not clearly violate Rule 11(b)." Id. at *4. Rule 11 sanctions, which are governed by a different standard and require a showing of bad faith, are not at issue here.

In sum, because the DOE has failed to show that the Sanctions Order is clearly erroneous or contrary to law, its Rule 72(a) Objection is overruled.

### CONCLUSION

For the foregoing reasons, the Court hereby (i) grants the DOE's Motion to Seal and (ii) overrules the DOE's Objection. Access to docket entry no. 100 shall remain limited to the DOE and the Court. Judge Moses's Sanctions Order stands, and the DOE and the Law Department are jointly responsible for the payment of $1000 to the Clerk of Court and $100 to Mr. Lopez directly. Payment shall be made within 30 days of this Order. The stay imposed by the endorsed order at docket entry no. 91 is hereby lifted.

This case remains referred to Judge Moses for general pretrial management. This Memorandum Order resolves docket entries no. 95 and 99. The Clerk of Court is respectfully directed to mail a copy of this Memorandum Order to Mr. Lopez at the address below.

SO ORDERED.

Dated: New York, New York
April 28, 2025

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

Mailed to:

Perry Lopez
22 Angus Court
Jackson, New Jersey 08527